UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREGG BRENTS & THE BRENTS CONSULTING GROUP, LLC,<br>Plaintiffs, | :<br>:<br>: |
| v. | : No. 3:02CV1958 (DJS) |
| ESPRIT DE CORPS RESOURCE GROUP, LLC, JAMES S. HUTZEL, JOANNA HUTZEL, MARSHELIA DEVAN, ELIZABETH ROGERS, KREGG R. HOOD & DAVID HUGGINS,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM OF DECISION

The defendants, Esprit De Corps Resource Group, LLC, James S. Hutzel, Joanna Hutzel, Marsheila DeVan, Kregg R. Hood and David Huggins ("Esprit") and defendant Elizabeth Rogers ("Rogers") have motioned this court to enforce a settlement agreement allegedly reached between the defendants and the plaintiff, Gregg Brents and the Brents Consulting Group, LLC ("Brents") on June 19, 2003. Brents opposes the motion on the grounds that he did not enter into any settlement agreement, but was merely considering a negotiated offer of settlement that was never actually approved. The court **DENIES** the motions to enforce **[docs. #58 and #64]**.

## INTRODUCTION

The parties to this action spent the summer of 2003 engaged in protracted negotiations aimed at reaching a mutually agreeable settlement. According to Esprit and Rogers, a settlement was achieved early in the evening of June 19. The settlement's principal terms were a payment by defendants of $52,500 with no content or competition restrictions attached. Esprit's lawyer,

Dan Schwartz, ("Schwartz") claims that Brents's lawyer, Stephen McNamara, ("McNamara") indicated that the parties "had a deal" that reflected these terms. Defendants argue that they prepared a draft settlement document to memorialize the terms of the agreement and sent this document to McNamara, on June 20. McNamara and Schwartz engaged in a series of discussions regarding a dispute over the language of paragraph 11 of the proposed settlement document. They resolved the dispute late in the day on June 20 and the document was submitted to their respective clients for approval. Brents, after reviewing the document, refused to sign. Defendants filed the pending motions after Brents hired new counsel and re-opened negotiations.

Brents does not dispute that a potential settlement consistent with the terms outlined by the defendants was negotiated on June 19. Nor does he dispute that the draft settlement document was completed and submitted to him for approval. Brents does, however, contend that he had not empowered McNamara to enter into an agreement on his behalf, that McNamara never indicated there was a deal and finally that an intention not to enter into the settlement agreement is reflected in the ultimate failure to sign the draft document. According to Brents the negotiations were preliminary, and while he was aware of their course he reserved a decision on settlement until the proposed agreement was complete. Absent an intent to agree, Brents argues there is no settlement for the court to enforce.

## DISCUSSION

"Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit." Janus Films, Inc. v. Miller, 801 F.2d 578, 583 (2d Cir. 1986). This court retains jurisdiction, prior to dismissal, to

enforce a settlement agreement in a case over which it presides.[1] "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes." Brown v. Nationscredit Commercial, No. 3:99cv592(EBB), 2000 WL 888507, *1 (D.Conn. June 23, 2000).

It is well established that parties are bound to the terms of a contract even though it is not signed and is an oral agreement. Millgard Corp. v. White Oak Corp., 224 F.Supp.2d 425, 432 (D.Conn. 2002). The only essential prerequisite for a valid settlement agreement is that all the parties mutually assent to the terms of conditions of the agreement. Brown, 2000 WL 88502 at *2. A settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing. Id. The settlement terms must, however, be clear and unambiguous in order for the court to enforce them. Millgard, 224 F.Supp.2d at 433. "Finally, if the parties do not intend to enter a binding agreement without a writing, they will not be legally bound until that condition is met."Id.(citing Consarc Corp. v. Marine Midland Bank, 996 F.2d 568, 574-576 (2d Cir. 1993).

The dispute underlying this motion can be distilled to a single debate. Schwartz claims that McNamara, during a telephone conversation on June 19, entered into a deal on behalf of his

---

1. The court notes that Brents raises and briefs at length two procedural impediments to this court ruling on the pending motion. Neither argument has merit. The plaintiff's claims that the court lacks jurisdiction over this motion are unwarranted. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 381 (1994) dealt with a motion to enforce filed after the entry of a stipulation and order of dismissal with prejudice. The present action has not been dismissed and so Kokkonen does not apply. The second argument is that the motion is improper pursuant to Federal Rule of Civil Procedure 15(b). Although the settlement agreement is a contract, the motion to enforce does not add any claim or defense that relates to the merits of the action and must be included in a pleading. The defendants cite no case law for the proposition that the existence of a settlement agreement is an issue to be tried within the meaning of Rule 15(b) and the court can find no legal or logical proposition that would make it so, prior to dismissal of the case.

client. McNamara denies concluding the deal and asserts that he was merely negotiating a proposal subject to final approval by his client, approval that was ultimately not granted. The parties each offer emails and affidavits in support of their respective arguments, but the evidence provided leaves the question in doubt.

The record of communications between Schwartz and McNamara conclusively proves that negotiations over portions of the draft settlement were ongoing through June 20. There is no evidence to substantiate Schwartz's recollection of the phone conversation, which McNamara politely disputes. The emails provided by Esprit show that McNamara promised only to propose the draft settlement agreement to the client. The draft settlement document outlines the essential terms of the proposed settlement, including the sum of the payment and the elimination of content and competition restraints, but the record is insufficient to show a mutual assent to those terms. Indeed, the continued insistence by the parties on completion of a written agreement and the securing of signatures prior to McNamara and Schwartz taking vacations suggest that the attorneys did not consider the deal complete but only nearing a completion that would not be assured until a writing was finished and the final document signed by all parties.

The court does not desire to cast aspersions on the lawyers in this case. It is apparent that there was a misunderstanding between the parties regarding the degree to which the negotiations were binding on the parties. Both Schwartz and McNamara clearly believe that their statements are true and accurate and there is nothing in the materials before the court that calls their sincerity into doubt. Indeed, it is the lack of a credibility problem that makes this dispute impossible to resolve in favor of the defendants. The court simply cannot, based on these facts, discern an intent on the part of Brents to be bound by the agreement. The parties may have agreed to a deal or they may not have agreed–unless the court can determine this critical fact with reasonable

confidence, there is no basis for a conclusion that the case has been settled.[2]

## CONCLUSION

The court finds that the parties did not mutually assent to the settlement terms negotiated between Attorneys Schwartz and McNamara on June 19, 2003. The facts presented in support of the motion to enforce are insufficient to permit a finding that the parties actually agreed to settle the case. The Motions to Enforce **[docs. #58 and #64]** are **DENIED**.

**IT IS SO ORDERED** at Hartford, Connecticut on this 27th day of September, 2004.

_____
DOMINIC J. SQUATRITO
UNITED STATES DISTRICT JUDGE

---

[2] A critical difference between this motion and most similar motions is that the negotiation and alleged agreement were entirely private, conducted outside of a formal court session or settlement conference before a judge or mediator. The conditions of such a private negotiation session are unknown to the court and in dispute by the parties. A more formal session typically requires the parties either to be present or authorize settlement in the event of a successful negotiation. The court cannot presume a similar set of conditions applied to the private conversations between Schwartz and McNamara. Finally, the parties did not notify the court on June 19 or June 20 that a settlement had been reached or that a document memorializing the completed settlement would be forthcoming. The pending motion was filed only after Brents refused to acknowledge the alleged settlement.